# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICAH 6:8 MISSION and<br><br>HEALTHY GULF,<br><br>Plaintiffs,<br><br>v.<br><br>RAIN CII CARBON, LLC,<br><br>Defendant. | Case No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

## STATEMENT OF THE CASE

1.  Micah 6:8 Mission and Healthy Gulf ("Plaintiffs") file this complaint against Rain CII Carbon, LLC ("Rain CII") for significant and ongoing violations of the Federal Water Pollution Control Act, 33 U.S.C. 1251 *et. seq.* (Clean Water Act or CWA) at the Rain CII Lake Charles Calcining Plant, 1920 Pak Tank Road, Sulphur, Louisiana 70665 (the "Plant").

2.  Under the disclosure requirements of the Emergency Planning and Community Right-to-Know Act, for years Rain CII reported that it was discharging lead, mercury, nickel, vanadium, benzo[g,h,i]perylene, and other polycyclic aromatic compounds (PAHs) (the "Rain CII Pollutants") in the Plant's effluent. This is to be expected; petcoke contains lead, mercury, nickel, vanadium, benzo[g,h,i]perylene, and other PAHs, and Rain CII's effluent comes into contact with petcoke. But because Rain CII never informed the Louisiana Department of Environmental Quality (LDEQ) about these pollutants in its effluent, Rain CII's Clean Water Act permit does not authorize discharge of, or otherwise address, the Rain CII Pollutants.

3.  As a result, Rain CII is: 1) violating the Clean Water Act by discharging the Rain CII Pollutants without permit authorization; and 2) violating National Pollutant Discharge Elimination System (NPDES) Permit LA0054062 (the "Permit") by failing to comply with its requirement that "[w]here the permittee becomes aware that it failed to submit any relevant facts in a permit application, or submitted incorrect information in a permit application or in any report to the Director, it shall promptly submit such facts or information," (the "application correction requirement"). Exhibit 1, 2018 Rain CII Lake Charles Permit and Fact Sheet at 41.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this action pursuant to 33 U.S.C. 1365(a) and 28 U.S.C. 1331.

5.  Pursuant to 33 U.S.C. 1365(c), venue is proper because the violations occurred and continue to occur in this District.

6.  Pursuant to 33 U.S.C. 1365(b)(1)(A), Plaintiffs gave notice more than sixty days prior to commencing this action to all required parties, including: 1) Rain CII; 2) LDEQ; and 3) the Environmental Protection Agency (EPA), by mailing them the notice of intent to sue (NOI) on October 31, 2024. Exhibit 2 (NOI); Exhibit 3 (green cards). The NOI included sufficient information to allow Rain CII to identify the specific CWA and permit provisions Plaintiffs allege it has violated, specific descriptions and dates for these violations and notice of suit for subsequent violations of these same requirements.

7.  Neither EPA nor the State of Louisiana has commenced or is diligently prosecuting a civil or criminal action against Rain CII in a court of the United States or the State of Louisiana.

8.  This action is not limited or barred by any existing administrative penalty order for which Rain CII has paid a penalty under the CWA or comparable state law. Neither Louisiana nor EPA has assessed penalties for any of the violations alleged herein.

9.  This action is not limited or barred by any pending or potential administrative penalty order because 1) The NOI was sent prior to EPA or LDEQ commencing any administrative penalties action against Rain CII for the violations alleged herein; and 2) this lawsuit has been filed before the 120th day after the date the NOI was sent.

10. As explained below, Rain CII has repeatedly violated the CWA and the Permit, and a reasonable trier of fact could find a continuing likelihood these violations will continue until the Court enjoins Rain CII from violating the CWA and the Permit and orderings it to remedy the causes of the violations.

## PARTIES

11. Micah 6:8 Mission is a 501(c)(3) non-profit membership organization located at 624 W. Verdine, Sulphur, LA 70663. 12. Micah 6:8 Mission has associational standing to bring this action. Exhibit 6 (organizational standing declarations).

12. Healthy Gulf is a 501(c)(3) non-profit membership organization located in offices throughout the Gulf, including 935 Gravier St #700, New Orleans, LA 70112. Healthy Gulf has associational standing to bring this action. Exhibit 6 (organizational standing declarations).

13. This litigation seeks to protect the water quality of the Calcasieu River and its connected waters, including the Calcasieu Ship Channel, the Intracoastal Waterway, Moss Lake, Mud Lake, and Calcasieu Lake (together, the "Calcasieu River"), the River's birds and aquatic life, and the people who fish, boat, walk along, and otherwise enjoy the Calcasieu River and its fauna.

14. These interests are germane to Micah 6:8 Mission's purposes, which include advocating for environmental sustainability and resilience, preparing for environmental challenges and disasters, and protecting the overall health of their community.

15. These interests are also germane to Healthy Gulf's purposes. Healthy Gulf is a membership organization whose purpose is to collaborate with and serve communities who love the Gulf of Mexico by providing the research, communications, and coalition-building tools needed to reverse the longstanding pattern of over-exploitation of the Gulf's natural resources. Healthy Gulf's vision is a healthy Gulf of Mexico, returned to its former splendor, which supports a thriving ecosystem that includes the Gulf's natural resources and, just as importantly, the people, communities, and cultures that depend on those resources. Healthy Gulf also believes that supporting the environmental health and ecosystem richness of the Gulf region is necessary

to secure quality of life, sense of place, economic vitality, and social justice within all Gulf communities. As part of Healthy Gulf's work for a healthy Gulf of Mexico, it has advocated for stronger NPDES permit limits on pollution entering the Gulf and the rivers that feed it—both for the protection of the Gulf's natural resources and the protection of the people living on the Gulf.

16. Neither the claims asserted, nor the relief requested in this litigation requires the participation of Healthy Gulf or Micah 6:8 Mission's individual members.

17. Plaintiffs' members who fish, or eat fish from, the Calcasieu River downstream of the Plant have been injured by the Rain CII Pollutants, particularly mobile, bioaccumulative pollutants like lead, mercury, nickel, and vanadium. These pollutants can travel long distances and can affect the health and quantity of fish and the health of people eating those fish, which diminishes their ability to fish, their health, and their enjoyment of eating what they catch.

18. Plaintiffs' members also boat and walk along the Calcasieu River downstream of the Plant and enjoy watching for fish, other aquatic life, and birds. The Rain CII Pollutants injure these members by increasing pollution in the River and in this fauna, like lead, mercury, nickel, and vanadium, and by increasing the uncertainty regarding pollution in the Calcasieu River. This pollution lessens these members' enjoyment of recreating in and walking along the Calcasieu River, increases their concerns and uncertainty about these waters' general health, fauna, and the safety of people eating fish from these waters.

19. Micah 6:8 Mission and Healthy Gulf members are thus harmed by the Rain CII Pollutants and by Rain CII's failure to correct its permit application and disclose this pollution, depriving them of important information about pollution in the Calcasieu River. These members thus have standing to sue in their own right. See Exhibit 7 (member standing declarations).

20. These injuries can be redressed by a favorable decision requiring Rain CII to stop unpermitted discharge of the Rain CII Pollutants and comply with the application correction requirement by disclosing the quantity of Rain CII pollutants the Plant is discharging. LDEQ would then either amend the Permit (requiring Rain CII to monitor and report discharges of the Rain CII Pollutants and authorizing or limiting these discharges so as to not cause or contribute to violation of water quality standards), or refuse to amend the Permit and require these discharges to stop.

21. Defendant Rain CII owns, manages and is responsible for the Plant's operations, and is the holder of the Permit.

## STATUTORY AND REGULATORY FRAMEWORK

22. The CWA sets as its goal, the restoration and maintenance of the chemical, physical, and biological integrity of the Nation's waters. To achieve this, the CWA prohibits the "discharge of any pollutant by any person" into waters of the United States except as in compliance with certain other enumerated sections of the Act. 33 U.S.C. 1311(a).

23. 33 U.S.C. 1362(12) defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source . . ." .

24. 33 U.S.C. 1362(6) defines "pollutant" as "sewage… sewage sludge…biological materials… and industrial, municipal . . . waste discharged into water."

25. 33 U.S.C. 1362(7) defines "navigable waters" as "the waters of the United States . . ."

26. 33 U.S.C. § 1362(14) defines a "point source" as "any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch . . . conduit . . . discrete fissure,

container . . . from which pollutants are or may be discharged . . ." Stormwater discharges associated with industrial activities are point sources. 33 U.S.C. § 1342(p)(2)(B), (p)(3)(A).

27. 33 U.S.C. 1365(a)(1) enables citizens to bring suit against "any person . . . who is alleged to be in violation of . . . an effluent standard or limitation" or "an order issued by . . . a State with respect to such a standard or limitation".

28. An "effluent standard or limitation" includes "an unlawful act under subsection (a) of section 1311 of this title" and "a permit or condition of a permit issued under section 402 [33 U.S.C. § 1342] . . . that is in effect under [the CWA]." 33 U.S.C. § 1365(f)(7). Discharging pollutants to navigable waters from a point source without a permit is "an unlawful act under subsection (a) of section 1311 of this title." The Permit is a "permit … issued under section 402 . . . that is in effect under [the CWA]."

29. 33 U.S.C. 1362(5) defines "person" to include "an individual, corporation, [or] partnership".

30. The Permit states that Rain CII "shall comply with all terms and conditions of this permit … Any permit noncompliance constitutes a violation of the Clean Water Act." Ex. 1 at 30.

31. 33 U.S.C. 1319(d) provides that any person who violates 33 U.S.C. 1311 or any permit condition or limitation implementing that section or others identified in 33 U.S.C. 1319(d) in a permit issued under 33 U.S.C. 1342 is subject to a civil penalty.

32. In accordance with the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, any person who violates 33 U.S.C. § 1311, or any other section identified under 33 U.S.C. § 1319(d), or any permit condition or limitation implementing those sections in a permit issued

under 33 U.S.C. 1342, is subject to a civil penalty of up to $64,618 per day for each CWA or permit violation. 33 U.S.C. 1319(d). EPA's most recent annual update to the statutory civil penalties, as adjusted for inflation, is effective as of December 27, 2023. 40 C.F.R. 19.4.

## FACTUAL BACKGROUND

### *Rain CII Lake Charles Plant*

33.     The Plant is a petcoke calcining facility The raw material used at petcoke calciners is petcoke. Petcoke is the high-temperature boiling residual hydrocarbons by-product that is left behind after refineries extract gasoline, diesel, and other higher-value products from crude oil. Petcoke includes ash and can be fairly soft due to its residual moisture and liquid hydrocarbon content.

34.     While petcoke's exact components depends on the crude oil used, EPA's petcoke analyses show the presence of lead, mercury, nickel, vanadium, benzo[g,h,i]perylene, and other PAHs. EPA, *Screening-Level Hazard Characterization for the Petroleum Coke Category* (June 2011); EPA Chicago Regional Lab, *Analyses of KCBX Pet Coke Samples in Southeast Chicago* (2014).

35.     Stormwater flowing over an industrial site can pick up pollutants like sediment, debris, and chemicals. NPDES Electronic Reporting Rule, 79 Fed. Reg. 71066, 71076 (Dec. 1, 2014). EPA instructs permit applicants that industrial stormwater is likely to contain pollutants associated with the facility's industrial processes, writing that "For example, if you manufacture pesticides, you should expect those pesticides to be present in contaminated stormwater runoff." EPA NPDES Permit Application Form 2C Instructions at 2C-3.

36.     The Plant discharges approximately 1.93 million gallons a day (MGD) of wastewater to Subsegment 030301 of the Calcasieu River.

37.     Almost all of the Plant's process water and stormwater (1.9 MGD) is discharged through Outfall 001. Ex. 1 at 1.

38.     Outfall 001 discharges dust suppression, equipment, and plant washdown water; utility wastewater, including once-through cooling water; process area stormwater, including dewatering stormwater runoff from the barge cargo areas and coke storage pads; non-process area stormwater; and energy recovery project wastewaters, including cooling tower blowdown, wastewater from water treatment, steam condensate, and boiler blowdown. Ex. 1 at 1.

39.     Outfall 001 is the only outfall in the Permit that discharges process area stormwater. The Plant discharges several kinds of stormwater through Outfall 001, including "process area stormwater including dewatering stormwater runoff from the barge cargo areas and stormwater runoff from the coke storage pads; non-process area stormwater." Ex. 1 at 1.

40.     Dewatering stormwater runoff from the barge cargo areas comes into contact with petcoke. Stormwater runoff from the green coke storage pad comes into contact with green petcoke. Dust suppression waters come into contact with petcoke. Equipment washdown water can come into contact with petcoke.

### *Rain CII Lake Charles TRI Submissions*

41.     EPA's Toxics Release Inventory (TRI) program requires facilities in certain industries, including petcoke calcining facilities, to report annually on "Form R" their releases of certain toxic chemicals. 40 CFR 372.5, 372.22. Facilities report their releases of toxic pollutants to air, surface water, and off-site facilities. Facilities use a "Form R" to report these discharges. When completing a Form R, a senior official must sign that "I hereby certify that I have

reviewed the attached documents and that, to the best of my knowledge and belief, the submitted information is true and complete and that the amounts and values in this report are accurate based on reasonable estimates using data available to the preparers of this report."

42. Facilities must keep records for at least three years to substantiate the information included in their Form Rs. 40 CFR § 372.10. Records can include effluent and influent monitoring records, mass-balance calculations, and information regarding the facilities' raw materials.

43. Rain CII's 2019 Form R reported that the Plant discharged 0.05 lbs. lead, 0.0005 lbs. mercury, 8.25 lbs. nickel, 21.9 lbs. vanadium, 0.54 lbs. PAHs, and 0.09 lbs. of benzo[g,h,i]perylene to the Calcasieu River through the plant's stormwater.

44. Rain CII's 2020 Form R reported that the Plant discharged 0.08 lbs. lead, 0.00077 lbs. mercury, 12.57 lbs. nickel, 32.01 lbs. vanadium, 0.83 lbs. PAHs, and 0.132 lbs. of benzo[g,h,i]perylene to the Calcasieu River through the plant's stormwater.

45. Rain CII's 2021 Form R reported that the Plant discharged 0.101 lbs. lead, 0.00101 lbs. mercury, 18.75 lbs. nickel, 53.81 lbs. vanadium, 0.98 lbs. PAHs, and 0.159 lbs. of benzo[g,h,i]perylene to the Calcasieu River through the plant's stormwater.

46. Rain CII's 2022 Form R reported that the Plant discharged 0.035 lbs. lead, 0.00035 lbs. mercury, 5.86 lbs. nickel, 15.73 lbs. vanadium, 0.367 lbs. PAHs, and 0.0587 lbs. of benzo[g,h,i]perylene to the Calcasieu River through the plant's stormwater.

47. Rain CII's 2023 Form R reported that the Plant discharged 0.05 lbs. lead, 0.0005 lbs. mercury, 8.93 lbs. nickel, 26.63 lbs. vanadium, 0.529 lbs. PAHs, and 0.084 lbs. of benzo[g,h,i]perylene to the Calcasieu River through the plant's stormwater.

48. The Plant thus discharged lead, mercury, nickel, vanadium, benzo[g,h,i]perylene, and other PAHs to the Calcasieu River, a water of the United States from 2019 to 2023.

### *Rain CII Lake Charles Permit Applications*

49. Both the 2017 and 2022 Rain CII Lake Charles permit applications ask Rain CII to mark whether each of a long list of pollutants is "believed present" or "believed absent" in each outfall's discharge. Exhibit 4, 2017 Permit Application ("2017 Application") at 35–50; Exhibit 5, 2022 Permit Application (the "2022 Application") at 37, 39, 46. Each required Rain CII to mark whether pollutants are "believed present" or "believed absent" based on Rain CII's knowledge of the Plant's raw materials, maintenance chemicals, intermediate and final products and byproducts, and any previous analyses known to Rain CII of its effluent or similar effluent. EPA NPDES Permit Application Form 2C Instructions at 2C-3.

50. Applicants must truthfully state whether pollutants are believed absent or present (40 CFR 122.22(d)), and applicants may not be willfully blind to the presence of pollutants in their discharge. Despite its own reporting of the Rain CII Pollutants, the presence of those pollutants in petcoke, and wastestream contact with petcoke, in both the 2017 Application and the 2022 Application, Rain CII stated that lead, mercury, nickel, vanadium, and benzo[g,h,i]perylene were "believed absent" from the Outfall 001 effluent. Ex. 4 at 35–50; Exhibit 5 at 37, 39, 46 (Outfall 1). Rain CII also stated that all of the PAHs listed in Table 2C were "believed absent," including acenaphthene, acenaphthylene, anthracene, benzo[a]anthracene, benzo[a]pyrene, benzo[b] fluoranthene, chrysene, dibenzo[a,h]anthracene, indeno(1,2,3-cd)pyrene, phenanthrene, and pyrene. Ex. 4 at 35–50; Ex. 5 at 37, 39, 46.

51. Rain CII also did not disclose the presence of the Rain CII Pollutants in any other of its other discharges, including the Outfall 002 sanitary wastewater and non-process stormwater. Ex. 4 at 60-62; Ex. 5 at 69-71.

### *Rain CII Lake Charles Permit*

52. LDEQ issued the Permit to Rain CII on April 2, 2018. Ex. 1 at 1. The Permit limits discharges of oil and grease, total organic carbon, zinc, chromium, and total suspended solids. LDEQ does not discuss any of the Rain CII Pollutants in the Permit or the fact sheet as potential pollutants of concern, and the Permit does not have monitoring requirements, effluent limits, or any other evidence it authorizes the Plant to discharge lead, mercury, nickel, vanadium, benzo[g,h,i]perylene, and PAHs through Outfall 001. Ex. 1 at 14.

53. Even though EPA's NPDES Permit Writers' Manual directs state permitting agencies to research potential pollutants of concern when drafting a facility's permit by reviewing a number of government information sources, including TRI data (NPDES Permit Writers' Manual at 4–17, 19) LDEQ has stated it did not review the Plant's TRI data before issuing the Permit. The Plant's discharges of the Rain CII Pollutants were thus not within the reasonable contemplation of LDEQ when it issued the Permit.

### CAUSES OF ACTION

### *Count 1: Unpermitted Discharges of Lead, Mercury, Nickel, Vanadium, Benzo[g,h,i]perylene, and PAHs*

54. Each paragraph above is incorporated by reference herein as if restated in full.

55. The CWA prohibits the discharge of pollutants from a point source into "waters of the United States" unless authorized by and in compliance with a CWA permit. 33 U.S.C. 1311(a), 1342(b), 1342.

56. Because the Permit does not authorize Rain CII to discharge lead, mercury, nickel, vanadium, benzo[g,h,i]perylene, and PAHs from Outfall 001 to the Calcasieu River, by doing so Rain CII has violated and continues to violate 33 U.S.C. 1311(a) by discharging pollutants from a point source into waters of the United States without permit authorization.

57. Each day Rain CII discharges discharge lead, mercury, nickel, vanadium, benzo[g,h,i]perylene, or PAHs into the Calcasieu River without permit authorization is a separate violation of 33 U.S.C. 1311(d), and penalties can be assessed for each day of violation.

## Count 2: Failure to Correct Permit Application

58. Each paragraph above is incorporated by reference herein as if restated in full.

59. The Permit requires that "[w]here the permittee becomes aware that it failed to submit any relevant facts in a permit application, or submitted incorrect information in a permit application or in any report to the Director, it shall promptly submit such facts or information." Ex. 1 at 41. This application correction requirement is an ongoing duty.

60. Rain CII stated in the 2022 Application that lead, mercury, nickel, vanadium, and benzo[g,h,i]perylene were "believed absent" from the Outfall 001 effluent. Ex. 5 at 37, 39, 46 (Outfall 1). Rain CII also stated that all of the PAHs listed in the 2022 Application's Table 2C were "believed absent," including acenaphthene, acenaphthylene, anthracene, benzo[a]anthracene, benzo[a]pyrene, benzo[b] fluoranthene, chrysene, dibenzo[a,h]anthracene, indeno(1,2,3-cd)pyrene, phenanthrene, and pyrene. Ex. 5 at 37, 39, 46.

61. Petcoke contains lead, mercury, nickel, vanadium, and benzo[g,h,i]perylene and other PAHs, and the effluent discharged from Outfall 001 comes into contact with petcoke. Rain CII reported in its 2019, 2020, 2021, 2022, and 2023 TRI Form Rs that the Plant's stormwater effluent contained lead, mercury, nickel, vanadium, and benzo[g,h,i]perylene and other PAHs.

62.   Rain CII has not corrected the 2022 Application to reflect the presence of lead, mercury, nickel, vanadium, and benzo[g,h,i]perylene and other PAHs in its effluent.

63.   Rain CII's ongoing failure to comply with the Permit's application correction requirement violates the Permit and 33 U.S.C. 1311(a).

64.   Each day Rain CII fails to correct the 2022 Application constitutes a separate violation of the Permit and the CWA, and penalties can be assessed for each day of violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that Rain CII is in violation of the Permit and the CWA;

B. Enjoin Rain CII from further violating the Permit and the CWA;

C. Order Rain CII to correct the 2022 Application to disclose its discharges of lead, mercury, nickel, vanadium, benzo[g,h,i]perylene, and other PAHs and apply for a permit modification based on these discharges;

D. Order Rain CII to assess and remediate the harm caused by its violations;

E. Assess Rain CII civil penalties of up to $64,618 for each day of violation;

F. Pursuant to 33 U.S.C. 1365(d), award Plaintiffs the cost of litigation, including reasonable attorney's fees, costs, and expert fees and expenses, including future oversight costs;

G. Retain jurisdiction to ensure compliance with the Court's decree; and

H. Grant such other relief as the Court deems just and proper.

Date: February 10, 2025.

                                 s/CLAY J. GARSIDE
                                 Waltzer Wiygul & Garside LLC
                                 3201 General DeGaulle Dr., Ste 200
                                 New Orleans, LA 70114
                                 (504) 340-6300
                                 clay@wwglaw.com

                                 s/MARGARET PARISH*
                                 Senior Attorney, Clean Water Program
                                 Environmental Integrity Project
                                 1000 Vermont Avenue NW, Suite 1100
                                 Washington, DC 20005
                                 (720) 841-0652
                                 mparish@environmentalintegrity.org

                                 * Admission for Pro Hac Vice Admission pending

                                 *Counsel for Healthy Gulf and Micah 6:8 Mission*

*Rain CII Lake Charles Plant*

# COMPLAINT EXHIBITS
# TABLE OF CONTENTS

| | |
|---|---|
| **Exhibit 1** | Rain CII Permit |
| **Exhibit 2** | Notice of Intent to Sue |
| **Exhibit 3** | Mail Cards and Receipts for NOI |
| **Exhibit 4** | 2017 Rain CII Permit Application |
| **Exhibit 5** | 2022 Rain CII Permit Application |
| **Exhibit 6** | Organizational Standing Declarations |
| **Exhibit 7** | Member Standing Declarations |