UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **MICAH 6:8 MISSION ET AL** | **CASE NO. 2:25-CV-00158** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **RAIN CII CARBON L L C** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court is "Rain CII Carbon, LLC's Motion to Dismiss" (Doc. 16) wherein, Defendant, "Rain", moves to dismiss the instant lawsuit because Plaintiff does not have standing to bring this action, and thus this Court lacks jurisdiction.

## BACKGROUND

In this lawsuit, Micah 6:8 Mission and Healthy Gulf allege that Rain has committed significant and ongoing violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (Clean Water Act, or "CWA") at the Rain plant. Plaintiffs accuse Rain of not informing the Louisiana Department of Environmental Quality ("LDEQ") in its permit application that it was discharging lead, mercury, nickel, vanadium, benzo[g,h,i]perylene, and other PAHs in its effluent ("Pollutants").[1]

Plaintiffs allege that Rain is violating the CWA by discharging pollutants without permit authorization and the National Pollutant Discharge Elimination System Permit (the "Permit) by failing to comply with its requirement that "[w]here the permittee becomes aware that it failed to submit any relevant facts in a permit application, or submitted

---

[1] Doc. 1, ¶ ¶ 1 and 2.

incorrect information in a permit application or any report to the Director, it shall promptly submit such facts or information."[2]

Plaintiff further complains that the LDEQ did not contemplate the Pollutants when it issued the Permit.[3] Plaintiff requests the following relief: (1) that the Court declare that Rain is in violation of the Permit and the CWA; (2) enjoin Rain from further violations; (3) order Rain to correct the 2022 Application to disclose its discharges of lead, mercury, nickel, vanadium, benzo[g, h, i]perylene, and other PAHs and apply for nan permit modification; (4) order Rain to assess and remediate the harm caused by its violations; (5) assess Rain with civil penalties of up to $64,618 for each day of violation; (6) award Plaintiffs the cost of litigation, and (7) retain jurisdiction over the case to ensure compliance with the Court's decree.

## RULE 12(b)(1) STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction. . .

A court may base its disposition of a motion to dismiss under Rule 12(b)(1) on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US West Communications, Inc.*, 117 F.3d 900 (5th Cir. 1997), citing

---

[2] *Id.* ¶ 3.
[3] *Id.* ¶ 53.

*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, (1981).

Courts may consider affidavits and exhibits submitted in connection with a Rule 12(b)(1) motion to dismiss. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). Once challenged with competent proof, the plaintiff must prove by a preponderance of the evidence that the court has subject matter jurisdiction. *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986). A motion to dismiss under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims that would entitle plaintiff to relief. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex.1995). The party asserting jurisdiction has the burden of pleading and proving that the Court has subject matter jurisdiction and must do so by a preponderance of the evidence. *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 487 (5th Cir. 2014). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

When reviewing a "facial attack" on jurisdiction, the well-pleaded factual allegations of the Complaint are accepted as true, and the Court evaluates the sufficiency

of those allegations. *Isom v. Louisiana Off. of Juv. Just.*, No. CV 21-00013, 2021 WL 5763560, at *2 (M.D. La. Dec. 3, 2021) (citing *Paterson v. Weinberger*, 644 F.2d 521, 524 (5th Cir. 1981)). A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Hall v. Louisiana*, 974 F. Supp. 2d 978, 985 (M.D. La. 2013) (citing *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir.1992)).

## LAW AND ANALYSIS

Defendant moves to dismiss this lawsuit due to lack of jurisdiction. Defendant maintains that Plaintiffs do not have standing to purse their claims.

To establish standing, Plaintiffs must show that at the time they filed the Complaint, at least one of their members was suffering an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. at 560–61; *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 65 (1987). Plaintiffs' injury must be "fairly trace[able] to the challenged action of the defendant and not ... th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife,* 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)) (ellipses and brackets in original). And it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*

Standing is an issue upon which the party invoking jurisdiction, the plaintiff, bears the burden of persuasion. *Defenders of Wildlife*, 504 U.S. at 560-61.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife,* 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889 (1990)). When a court is considering a motion to dismiss under Rule 12(b)(1), "a suit will not be dismissed for lack of standing if there are sufficient 'allegations of fact'—not proof—in the complaint or supporting affidavits." *Ondrusek v. United States Army Corps of Eng'rs*, 123 F.4th 720, 728 (5th Cir. 2024) (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 65 (1987)). Moreover, when a court is assessing justiciability on the basis of the pleadings, that court "must accept as true all material allegations of the complaint and ... construe the complaint in favor of the complaining party." *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.,* 82 F.4th 345, 350 (5th Cir. 2023) (quoting *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.,* 627 F.3d 547, 550 (5th Cir. 2010)).

Plaintiff relies on the standing affidavits of three of its members, Ike Guidry, James Hiatt, and Breon Robinson. Guidry and Hiatt declare that they regularly fish and crab within five to six miles of the Rain plant. Robinson declares that he regularly consumes the seafood that comes from the Calcasieu waters and is concerned for his health because of the potential for mercury in the fish he eats due to the discharge from the Alcoa and Rain plants. Plaintiffs' member, James Hiatt, declares that the discharged Pollutants from the "Alcoa Reynolds Carbon Plaint," is about one-half of a mile from Calcasieu Point Landing

where he occasionally visits with his family to fish and crab.[4] Hiatt declares that he is caused him harm because he eats the fish, and the Rain plant contributes to pollution in the Calcasieu River, Moss Lake, and Mud Lake, which diminishes his enjoyment at Calcasieu Point Landing and Intracoastal Park.[5] Hiatt also fishes and crabs at Intracoastal Park just south of Ellender Bridge, which is about two to three miles downstream from the Alcoa Reynolds plant and five to six miles downstream of the Rain plant.[6]

Plaintiff member Ike Guidry declares that he fishes in the Calcasieu River south of Sulphur, Mud Lake, the Intracoastal Waterway near the Intracoastal Park in Sulphur and the Calcasieu Ship Cannel. He declares that these waters are approximately six miles downstream from the Rain plant.[7]

Defendant argues that two of Plaintiffs' members, Breon Robinson and James Hiatt, fail to meet the traceability requirement because despite their allegations that they regularly fish five to six miles from the plant, they fail to allege sufficient facts to support the mandatory *prima facie* showing that the alleged 'discharges have made their way' from the point of discharge to the location of the alleged injury. Defendant also argues that the allegations that Plaintiffs were potentially injured by eating Calcasieu River seafood, fails to allege where the seafood was caught and how it is connected with the Rain plant.

Plaintiffs argue that Defendant's arguments are inappropriate at the motion to dismiss stage because the complaint need only allege injuries, but not proof. Plaintiff

---

[4] Hiatt Declaration, ¶¶ 10,11, Doc. 1-10.
[5] Hiatt Declaration ¶ 14.
[6] Hiatt Declaration, ¶ 12.
[7] Ike Guidry Declaration, ¶ 8, Doc. 10-1.

objects to Defendant's cited cases and assert that these decisions were based on the merits or on subsequent remedies, and they were not decisions on motions to dismiss.

Plaintiffs allege, supported by its standing Declarants, that the Rain plant has discharged lead, mercury, nickel, vanadium benzo[g,h,i]perylene, and other PAHs ( "Rain CII toxics") into the Calcasieu River without permit authorization.[8] Plaintiff concedes that the TRI reports are based on estimates.[9] Plaintiff also notes that in March 10, 2025, Rain admitted to the LDEQ through an email,[10] that it had discharged many of the Rain CII toxics; Plaintiffs assert that the measurable quantities are significantly above what other states consider safe for fish. See e.g., Michigan Rule 57, Surface Water Quality Values for Great Lakes, (dec. 6, 2024);[11] Indiana Department of Environmental Management Tier II Acute and Chronic Aquatic Life Values.[12] Plaintiff also notes that Defendant marked the Rain toxics as "believed absent" in its 2017 and 2022 permit applications, despite its TRI reports that said otherwise.

Plaintiffs assert that because Defendant marked "believed absent" as to the CII toxics in its 2017 permit application, it was not required to submit samples for these Pollutants, and therefore LDEQ did not consider them in the 2018 permit, nor did it require any monitoring. As such, Plaintiff argues that the Plaintiff members do not know the concentrations of the CII toxics, nor the extent to which they are harming fish crabs, or

---

[8] Plaintiff relies on Rain's certified annual Toxics Release Inventory ("TRI") Form R reports. Complaint, ¶ ¶ 41-48, Doc. 1.
[9] Plaintiff's opposition, p. 4, Doc. 20.
[10] Email from Davind Anderson to Christy Rogers; Jennifer L. Sheppard, Re: Rain CII Carbon-Lake Charles LPDES Permit (Mar. 10, 2025), https://edms.deq.louisiana.gov/app/doc/view?doc=14690717.
[11] https//www.michigan.gov/egle/about/organization/water-resources/glwarm/rule-57-water-quality-values
[12] https://19january2021snapshot.epa.gov/sites/static/files/2015-06/documents/in_al_431_02241999.pdf

other aquatic life, and the Calcasieu River. Thus, the lack of detailed information is an integral part of Plaintiff's injuries as it causes fears and concerns about the health of the Calcasieu River, its fish, and whether the seafood caught from the River can be consumed. Plaintiffs argue that these fears and concerns about the unmonitored pollution and its impacts are sufficient allegations of injuries to establish standing.[13]

Defendant takes issue with the standing affiant's failure to connect the Rain plant's alleged wrongful discharge to their alleged injuries, such as their fishing spot, and/or where they catch the seafood that they are consuming. In other words, have the alleged discharge made their way from the point of discharge to the location of the alleged injury?

Defendant relies on *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 361 (5th Cir. 1996) (finding that an injury dependent on water passing through downstream lakes and encountering other flow sources is too attenuated to show geographic nexus without a supporting showing of proof); *Ctr. For Biological Diversity v. United States Env't Prot. Agency,* 937 F.3d 533, 545 (5th Cir. 2019) (holding that in CWA cases not involving small bodies of water, courts are prohibited "from inferring that a discharge in one place will necessarily affect a plaintiff's interest in another place.").

Defendant also relies on *Sierra Club, Lones Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 557 (5th Cir. 1996), wherein the Fifth Circuit's geographical nexus

---

[13] Where a party seeks associational standing on behalf of its members, the party must demonstrate that, "(1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *Ctr. For Biological Diversity v. United States Env't Prot. Agency,* 937 F.3d 533, 536 (5th Cir. 2019) (quoting *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (citing *Hunt. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

requirement stems from the three-factor test for establishing that an alleged injury is "fairly traceable" to alleged discharges by the defendant. A plaintiff must "show that a defendant has (1) discharged some pollutant in concentrations greater than allowed by its permit (2) into a waterway in which the plaintiffs have an interest that is or may be adversely affected by the pollutant and that (3) the pollutant causes or contributes to the kinds of injuries alleged by the plaintiffs."

"Whether a court can infer a causal link between a source of pollution and at least some portion of a petitioner's injury is a fact-specific inquiry that turns on many factors, including the size of the waterway, the proximity of the source and the injury, forces like water currents, and whether discharges will evaporate or become diluted." *Ctr. for Biological Diversity,* 937 F.3d at 545.

Plaintiffs note that Defendant has challenged Plaintiffs' standing by arguing that they fail to provide information about water currents, water samples, applicable flow rates, flow direct, "water concentration in the Intracoastal waterway contributed by the Plant's discharge," and "the concentration of constituents allegedly originating from Rain's alleged wrongful discharge. Plaintiffs argue that Defendant's reliance on *Crown Central* is misplaced because in that case, the Court granted the dismissal at the summary judgment stage after determining that Plaintiffs had failed to submit competent summary judgment evidence to establish that its members' injuries are "fairly traceable to the facilities' discharge source." The *Crown Central* court also held that "[w]e do not impose a mileage or tributary limit for plaintiffs proceeding under the citizen suit provision of the CWA. To the contrary, plaintiff who use "waterways" far downstream form the source of unlawful

pollution may satisfy the "fairly traceable" element by relying on alternative types of evidence." *Id.* at 362. The Court went further to provide examples of types of evidence such as water samples showing the presence of a pollutant of the type discharged by the defendant upstream or expert testimony. The Court warned that it would not assume that an injury is fairly traceable to a defendant's conduct solely on the basis of the observation that water runs downstream. *Id.*

The Court agrees with Plaintiffs that it would be inappropriate at this juncture to dismiss Plaintiffs' claims where the complaint has alleged injuries in conjunction with its standing declarations. The Court finds that a motion for summary judgment would be more appropriate to allow the parties to submit evidence that would allow this Court to determine if, in fact, Plaintiffs have standing to bring this citizen's suit. Plaintiffs have alleged that Defendant has discharged unlawful pollutants into the Calcasieu River without permit authorization. Plaintiffs have also alleged that they have been injured by these Pollutants by harming the fish and/or seafood that they catch and consume. Whether or not the impact reached five to six miles downstream will be determined at a later date after the parties have been given the opportunity to present evidence of their alleged injury.

## **CONCLUSION**

For the reasons explained herein, the Court will deny Rain CII Carbon, LLC's Motion to Dismiss" (Doc. 16).

**THUS DONE AND SIGNED** in chambers on this 29th day of September, 2025.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**